TROY LAW, PLLC
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and*
*potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Case No. 21-cv-06993**

------------------------------------------------------------------x
NIQUAN WALLACE,
*on his own behalf and on behalf of others similarly*
*situated*

                                        Plaintiff,

                        v.

INTERNATIONAL HOUSE OF PANCAKES, LLC,
        d/b/a iHop
TRIHOP MANAGEMENT, LLC
        d/b/a iHop;
TRIHOP 177TH STREET, LLC
        d/b/a iHop;
TRIHOP 14TH ST LLC
        d/b/a iHop
TRIHOP 69TH STREET LLC
        d/b/a iHop
JOHN DOE LLC,
        d/b/a iHop
BEN ASHKENAZY,
EDWARD SCANNAPIECO, and
KWESI THOMAS

                                        Defendants.

------------------------------------------------------------------x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**


**COMPLAINT**


**DEMAND FOR JURY TRIAL**

        Plaintiff NIQUAN WALLACE (hereinafter referred to as Plaintiff), on behalf of himself

and others similarly situated, by and through his attorney, Troy Law, PLLC, hereby brings this

complaint against Defendants INTERNATIONAL HOUSE OF PANCAKES, LLC. d/b/a iHop;

TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH

STREET LLC d/b/a iHop, IHOP d/b/a iHop, BEN ASHKENAZY, EDWARD SCANNAPIECO,

and KWESI THOMAS, and alleges as follows:

## INTRODUCTION

1.      This action is brought by the Plaintiff NIQUAN WALLACE, on behalf of himself as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) uniform maintenance damages, (3) liquidated damages, (4) prejudgment and post-judgement interest; (5) attorney's fees and cost, (6) uniform maintenance cost, and or (7) unpaid wages

4.      Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) Uniform maintenance

damages, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, (9) attorney's fees and costs, (10) unpaid wages.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

7.      From on or about March 18, 2018 to May 3, 2019, Plaintiff NIQUAN WALLACE was employed by Defendants to work as a waiter for Defendants at 4168 Broadway, Manhattan, NY 10033.

## DEFENDANTS

### *Corporate Defendants*

8.      Defendant INTERNATIONAL HOUSE OF PANCAKES, LLC (hereinafter Defendant "iHop Corporate") upon information and belief, is a foreign corporation, located at 450 North Brand Boulevard, Glendale, CA 91203, and is a wholly owned subsidiary of DINE EQUITY, INC.

9.      Defendant iHop Corporate is the franchisor of an international chain of iHop restaurants, including, upon information and belief, over 30 iHop restaurants in the Greater New York City area.

10.      Defendant TRIHOP MANAGEMENT, LLC (hereinafter "Defendant TriHop") is a franchisee of franchisor Defendant iHop Corporate.

11.      Defendant TRIHOP 177TH STREET, LLC d/b/a iHop is a domestic limited liability company organized under the laws of the State of New York with a principal address at 4168 Broadway, Manhattan, NY 10033.

12.      TRIHOP 177TH STREET, LLC d/b/a iHop is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

13.      TRIHOP 177TH STREET, LLC d/b/a iHop purchased and handled goods moved in interstate commerce.

14.      Defendant TRIHOP 14TH ST LLC d/b/a iHop is a domestic limited liability company organized under the laws of the State of New York with a principal address at 235 East 14th Street, #237, New York, NY 10003

15.      TRIHOP 14TH ST LLC d/b/a iHop is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

16.      TRIHOP 14TH ST LLC d/b/a iHop purchased and handled goods moved in interstate commerce.

17.      Defendant TRIHOP 69TH STREET LLC d/b/a iHop is a domestic limited liability company organized under the laws of the State of New York with a principal address at 101 S 69th St, Upper Darby, PA 19082.

18.      TRIHOP 69TH STREET LLC d/b/a iHop is a business engaged in interstate

commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

19.     TRIHOP 69TH STREET LLC d/b/a iHop purchased and handled goods moved in interstate commerce.

20.     In addition, upon information and belief, Defendants operate a JOHN DOE CORPORATION, a domestic limited liability company organized under the laws of the State of New York with a principal place of business at 243-247 East 149th Street, Bronx, NY 10451.

21.     JOHN DOE CORPORATION d/b/a iHop is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

22.     JOHN DOE CORPORATION d/b/a iHop purchased and handled goods moved in interstate commerce.

### Owner/Operator Defendants

23.     The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

24.     EDWARD SCANNAPIECO, known as Owner to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH STREET LLC d/b/a iHop, JOHN DOE CORPORATION d/b/a iHop.

25.     EDWARD SCANNAPIECO did act upon his authority to hire iHop employees, including all the Managers.

26.     EDWARD SCANNAPIECO also fired the busser ROGER DURAN, and LOPEZ. He fired Mangers NATE and SYLVIA ONYEWUENYI.

27.     EDWARD SCANNAPIECO fired server MICHELLE WILSON.

28.     EDWARD SCANNAPIECO signed the checks going to iHop waitstaff, using the "Server Checkout," a machine which keeps track of the cash inflow and outflow.

29.     EDWARD SCANNAPIECO acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH STREET LLC d/b/a iHop, JOHN DOE CORPORATION d/b/a iHop.

30.     KWESI THOMAS,  known as Manager to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH STREET LLC d/b/a iHop, JOHN DOE CORPORATION d/b/a iHop.

31.     KWESI THOMAS did act upon his authority to hire iHop employees.

32.     KWESI THOMAS did act upon his authority to fire Plaintiff.

33.     KWESI THOMAS also fired GENESIS and MELISSA.

34.     KWESI THOMAS would handle the server checkout and the ATM machine money would go straight to EDWARD SCANNAPIECO and BEN ASHKENAZY.

35.     In addition KWESI THOMAS fired GENESIS, MELISSA, SEAN, MARLO,

MARGIE, and AMBER.

36.     KWESI THOMAS would pay iHop employees by check with iHop paystubs which were issued by EDWARD SCANNAPIECO.

37.     KWESI THOMAS  acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH STREET LLC d/b/a iHop, JOHN DOE CORPORATION d/b/a iHop.

38.     BEN ASHKENAZY known as Chairman and CEO to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH STREET LLC d/b/a iHop, JOHN DOE CORPORATION d/b/a iHop.

39.     EDWARD SCANNAPIECO and BEN ASHKENAZY co-own four (4) iHop's, that share the substantially same labor practices:

    a.  4168 Broadway, New York, NY 10033;

    b.  101 S 69th St, Upper Darby, PA 19082

    c.  235 East 14th Street, #237, New York, NY 10003; and

    d.  243-247 East 149th Street, Bronx, NY 10451.

40.     Upon information and belief, EDWARD SCANNAPIECO and BEN ASHKENAZY owned the gym and entire building at 4168 Broadway, Manhattan, NY 10033.

41.     BEN ASHKENAZY acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH STREET LLC d/b/a iHop, JOHN DOE CORPORATION d/b/a iHop.

## STATEMENT OF FACTS

*Corporate Defendants TRIHOP 177TH STREET, LLC d/b/a iHop, TRIHOP 14TH ST LLC d/b/a iHop, TRIHOP 69TH STREET LLC d/b/a iHop, JOHN DOE CORPORATION d/b/a iHop d/b/a iHop Constitute as an Enterprise*

42.     Upon information and belief, Corporate Defendants are joint employers of Plaintiff and constitute as an enterprise as the terms defined by 29 USC §203 (r) as they share staff, including Plaintiff, pay Plaintiff for the work performed at the enterprise, and are otherwise engaged in related activity preformed though uniformed operation and/or common control for a business purpose, and are co-owned by the same partner.

43.     Defendants also paid Plaintiff using different companies interchangeably regardless of which location he worked.

44.     For instance, while Plaintiff worked at TRIHOP 177TH STREET LLC d/b/a iHop, Plaintiff was paid by TRIHOP 14TH STREET LLC d/b/a iHop.

45.     Upon information and belief, Plaintiff knows Owner/ Operator Defendants BEN ASHKENAZY and EDWARD SCANNAPIECO to own, visit, and mange iHops at least four (4) different locations: 4168 Broadway, New York, NY 40003, 101 S 69th St, Upper Darby, PA, 19082, 235 East 14th St, #237, New York, NY 10003, and 243-247 East 149th Street, Bronx, NY 10451.

46.     Plaintiff worked for TRIHOP 14TH ST LLC d/b/a iHop from 2014 to 2015.

47.     Similarly, the General Manager KWESI THOMAS later on became the

General Manager of TRIHOP 14TH ST LLC d/b/a iHop.

48.     Furthermore, the General Managers hired by Defendants rotate among the 4 locations, including the Pennsylvania locations.

49.     Corporate Defendants share employees including employees VENUS, HAROLD, and other individuals who worked for both TRIHOP 14TH ST LLC d/b/a iHop and TRIHOP 177TH STREET, LLC d/b/a iHop.

50.     Plaintiff himself applied for transfer to TRIHOP 177TH STREET, LLC d/b/a iHop.

51.     During his years working for defendant EDWARD SCANNAPIECO told Plaintiff he wanted him to serve customers in the same manor customers were served at other locations he owned.

52.     Employees of the differing locations, including both TRIHOP 14TH ST LLC d/b/a iHop and TRIHOP 177TH STREET, LLC d/b/a iHop use the same ADT website to clock in, view their hours, and receive their pay.

53.     Additionally, Defendant KWESI THOMAS was moved around from the Broadway location to the East 14th street location of Defendant TRIHOP 14TH ST LLC d/b/a iHop.

54.     Ingredients such as meat, batter, dressing, and dairy products, were shared among the 4 locations. Plaintiff knew this because when the 4168 Broadway, New York, NY 10033 was running low, they would be sent to 235 East 14th Street, #237, New York, NY 10003 to get some.

55.     iHop at 243-247 East 149th Street, Bronx, NY 10451 is a location that has been open since 2021, and upon information and belief, Defendants share ingredient with that

store as well.

56.     Materials such as knives, forks, dishes and menus were shared. Plaintiff knew this because when the Broadway location was running low, they would be sent to another location to get some

57.     There is one website used by all national IHOP chains (restaurants.ihop.com) that have information regarding hours, locations, and menus. All four defendant locations appear on this website.

58.     Inspectors from the Corporate chain would come and grade the Broadway location on matters such as cleanliness, customer greetings, time in which customers spent waiting, and food preparation.

59.     Corporate Defendants run ad promotions together such as "pancake day" or early morning specials, or seasonal promotions.

## Wage and Hour Claims

60.     There are at least forty (40) employees at the restaurant, including both non-tipped employees and tipped employees.

61.     Defendants committed the following alleged acts knowingly, intentionally willfully, and maliciously against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

62.     Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

63.     At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiff and similarly situated employees at least the New York minimum wage for each hour worked.

64.    At all relevant times, Defendants knowingly, willfully, and maliciously failed to pay Plaintiff his lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

65.    While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employee's overtime.

66.    Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

67.    Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

68.    At all relevant times, Defendants knowingly, willfully, and maliciously failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

69.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

70.    Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

***Plaintiff NIQUAN WALLACE***

71.    From on or about March 18, 2018 to April 01, 2019, Plaintiff NIQUAN

WALLACE was employed by Defendants to work at 4168 Broadway, Manhattan, NY 10033 as a waiter.

72.     iHop is an American-style breakfast restaurant serving such foods as pancakes ad waffles and is well known to be, and is, open 24 hours per day, 7 days per week. Customers can dine in at the restaurant, which offers full table service, or they can place take out orders via the phone.

73.     From on or about March 18, 2018 to October 07, 2018, Plaintiff NIQUAN WALLACE's regular work schedule ran from 17:30-02:00 on Wednesday evening into Thursday morning and Friday evening into Saturday morning for a toal of seventeen (17) hours a week.

74.     From on or about October 08, 2018 to May 3, 2019, Plaintiff NIQUAN WALLACE's regular work schedule ran from 06:00-03:00 From Saturday morning until Sunday morning. 09:00-03:00 Sunday monring until Monday Morning. During the week they would work two (2) shifts of 09:00- 22:00 and one (1) shift from 10:00-18:00, usually on Mondays, Wednesday, and Friday, for a total of sixty eight (68) hours a week.

75.     At all relevant times, Plaintiff NIQUAN WALLACE did not have a fixed time for lunch or for dinner.

76.     In fact, Plaintiff NIQUAN WALLACE did not have a break at all. He had to continually work throughout the entirety of his shifts.

77.     This occurred in all shifts worked by Plaintiff NIQUAN WALLACE no matter how many hours he worked.

78.     From on or about March 18, 2018 to December 31, 2018, Plaintiff NIQUAN WALLACE was paid a rate of eight dollars ($8.00) per hour, plus tips, but not for all hours

worked, due to unlawful withholding from Plaintiff's wages, as described below.

79.     This hourly rate of eight dollars ($8.00) was less than the New York

subminimum wage for waiters in 2018.

80.     From on or about January 1, 2019 to May 3, 2019, Plaintiff NIQUAN

WALLACE was paid at a rate of ten dollars ($10.00) per hour, plus tips, but not for all hours

worked, as further described below.

81.     However, during the employment period between October 08, 2018 to May 3,

2019, Plaintiff NIQUAN WALLACE was told that he would be paid his base salary for

between thirty (30) to thirty-two (32) hours per week.

82.     For the other thirty six (36) to thirty eight (38) hours of the week, Plaintiff

NIQUAN WALLACE was only allowed to keep his tips, and did not receive his normal

hourly salary.

83.     At all relevant times, the tips were given to Plaintiff NIQUAN WALLACE in

cash, but "taxed" at an amount, upon information and belief, higher than the actual employee

withholding to the IRS and the NYS Department of Finance.

84.     As a result, during the employment period between October 08, 2018 to May

3, 2019, Plaintiff NIQUAN WALLACE would receive only an amount in base pay between

Twenty Five Dollars ($25) and One Hundred Eighty Five Dollars ($185) a week because the

iHop would "tax" the tips amount that was put into the system.

85.     At all relevant times, Plaintiff NIQUAN WALLACE was not paid overtime

pay for overtime work.

86.     At all relevant times, Plaintiff NIQUAN WALLACE was never informed of

his hourly pay rate or any tip deductions toward the minimum wage.

87.     Further, at all relevant times, Plaintiff NIQUAN WALLACE had to bear the cost of uniform maintenance, as he had to pay for his uniform to be laundered every day. Plaintiff was only given one (1) uniform and it had to be clean with no creases while he was at work.

88.     At all relevant times, Plaintiff NIQUAN WALLACE's side work consisted of: rolling pieces of silverware, doing the salad bowl, restocking the To Go plates, restocking the freezers for the cooks, cleaning the ice fridges, clean up the soda machines, take off the nuzzles, restock ice, sweep, mop, clean off the plates, and cook while serving at the same time.

89.     From on about March 18, 2018 to October 07, 2018, Plaintiff NIQUAN WALLACE worked over two (2) hours of side work per work day.

90.     From on about October 08, 2018 to May 3, 2019, Plaintiff NIQUAN WALLACE worked over two (2) hours of side work per work day.

91.     At all relevant times, Plaintiff NIQUAN WALLACE's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

92.     Plaintiff NIQUAN WALLACE was never informed by his employer if he part of a tip pool or tip sharing program, nor did he consent to one.

93.     Throughout his employment, Plaintiff NIQUAN WALLACE was not given a statement with his weekly payment which accurately reflects the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage.

94.     In fact, the paystubs intentionally misstates the hours worked.

95.     Throughout his employment, Plaintiff NIQUAN WALLACE was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

96.     Throughout his employment, Plaintiff NIQUAN WALLACE was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

## COLLECTIVE ACTION ALLEGATIONS

97.     Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

98.     Plaintiff brings his NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

99.     All said persons, including Plaintiff, are referred to herein as the "Class."

100.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

101.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

102.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.      Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

b.      Whether Plaintiff and Class members are promised and not paid at their promised hourly wage;

c.      Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

d.      Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

e.      Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

f.      Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

g.      Whether Defendants maintained a policy, pattern and/or practice of requiring employees to pay for their uniform maintenance.

h.      Whether Defendants maintained a policy, pattern and/or practice of misappropriating tips.

i.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

j.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

k.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

### *Typicality*

103.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *Adequacy*

104.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are

experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

### *Superiority*

105.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

106.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Wages For all Hours Worked**
**Brought on behalf of the Plaintiff and the FLSA Collective]**

107.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

108.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff in full, and the similarly situated collective action members, for some or all of the hours they worked.

109.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

110.    Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage/ Unpaid Wages Brought on behalf of Plaintiff and Rule 23 Class]

111.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.    At all relevant times, Plaintiff is employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

113.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

114.    When Defendant did pay Plaintiff, it weas below the New York minimum wage.

115.    Defendants knowingly, willfully, and maliciously violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

116.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

117.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the

minimum wage, whichever is greater. 29 U.S.C. § 207(a).

119.    The FLSA provides that any employer who violates the provisions of 29

U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime

compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

120.    Defendants' failure to pay Plaintiff and the FLSA Collective their overtime

pay violated the FLSA.

121.    At all relevant times, Defendants had, and continue to have, a policy of

practice of refusing to pay overtime compensation at the statutory rate of time and a half to

Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours

per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*,

including 29 U.S.C. §§ 207(a)(1) and 215(a).

122.    The FLSA and supporting regulations required employers to notify employees

of employment law requires employers to notify employment law requirements. 29 C.F.R. §

516.4.

123.    Defendants willfully and maliciously failed to notify Plaintiff and FLSA

Collective of the requirements of the employment laws in order to facilitate their exploitation

of Plaintiff' and FLSA Collectives' labor.

124.    Defendants knowingly, willfully, and maliciously disregarded the provisions of

the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members

the statutory overtime rate of time and one half for all hours worked in excess of forty (40)

per week when they knew or should have known such was due and that failing to do so would

financially injure Plaintiff and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiff and Rule 23 Class]

125.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

126.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

127.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

128.    Defendant' failure to pay Plaintiff his overtime pay violated the NYLL.

129.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff and Rule 23 Class]

130.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

131.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

132.    Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiff and Rule 23 Class]

133.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

134.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

135.   Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

136.   Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

137.   Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VII.
### [Violation of New York Labor Law—Failure to Provide Wage Statements Brought on behalf of Plaintiff and Rule 23 Class]

138.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

139.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

140.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

141.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT VIII.
### [Violation of New York Labor Law- Failure to Provide Uniform Maintenance Pay]

142.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

143.    Defendant required Plaintiff's uniform to be clean and laundered almost daily.

144.    Defendant did not reimburse Plaintiff for the cost of maintaining his uniform

145.    The NYLL and supporting regulations require employers pay workers uniform maintenance cost. NYCRR §146-1.7 promulgated by NYLL § 199.

146.    Under this provision, Plaintiff is owed back pay of $16.20 for every week he worked before December 31, 2018 and 18.65 for every week he worked after as Defendant was a large employer, employing eleven or more persons in New York City NYCRR §146-1.7(a)(1)(i).

## COUNT IX.
### [Violation of FSLA- Uniform Cost Brought Plaintiffs Pay Below Minimum Wage]

147.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

148.    Defendant required Plaintiff's uniform to be clean and laundered almost daily expense.

149.    Defendant did not reimburse Plaintiff for the cost of maintaining his uniform.

150.    Defendants uniform requirements made Plaintiff's salary fall before the federal minimum wage in violation of the FSLA.  29 C.F.R. §§ 531.3(d)(2), 531.32(c), 531.35.

151.    The Department of Labor standard for payment of uniform maintenance is three dollars thirty-five cents ($3.35) a week.  DOL FOH 30c12(b)(3).

## COUNT X.
### [Violation of 29 U.S.C. §203(M) And (T)—Illegal Retention Of Tips Brought on Behalf Of Plaintiffs And The FLSA Collective]

152.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

153.    A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

154.    The FLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

155.    Retaining portions of the tips from iHop waitstaff for "tax" purposes when such amount was in excess of the amount reported to the tax departments is prohibited under the FLSA.

## COUNT XI.
### [Illegal Tip Retention, NYLL §146-2.18 and NYLL §146-2.20 Brought on behalf of Plaintiffs and the Rule 23 Class]

156.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

157.    Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

158.    A charge purported to be a gratuity, including charges advertised to be "delivery

fee" to customers, must be distributed in full as gratuities to the service employees or food service workers who provided the service.

159.    §146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

160.    NYLL §146-2.20 provides that when tips are charged on credit cards, the employer must return to the employee the full amount of the tip charged on credit card minus the pro-rated portion of the tip taken by the credit card company.

161.    Retaining portions of the tips from iHop waitstaff for "tax" purposes when such amount was in excess of the amount reported to the tax departments is prohibited under the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An Award of uniform maintenance wages under FSLA and NYLL.

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

       k)      An award of liquidated and/or punitive damages as a result of Defendants' willful and malicious failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

       l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

       m)      The cost and disbursements of this action;

       n)      An award of prejudgment and post-judgment fees;

       o)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

       p)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.

Dated: Flushing, New York

August 19, 2021

                        TROY LAW, PLLC
                        *Attorneys for the Plaintiff, proposed FLSA*
                        *Collective and potential Rule 23 Class*
                        /s/ John Troy
                        John Troy (JT0481)
                        Aaron Schweitzer (AS 6369)
                        Tiffany Troy (Bar ID 5881735)

/aoc