USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/29/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIQUAN WALLACE, on his own behalf and on
behalf of others similarly situated,

Plaintiff,

-against-

INTERNATIONAL HOUSE OF PANCAKES, LLC,
*et al.*,

Defendants.

---

1:21-cv-6993-MKV

ORDER DENYING
APPROVAL OF SETTLEMENT
OF FLSA CLAIMS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff is a former waiter for the International House of Pancakes, LLC, better known as

IHOP, who claims to have been overworked and underpaid by the restaurant chain well known for

being open around the clock.  As a result, Plaintiff brought this action asserting various claims

under the Fair Labor Standards Act ("FSLA") and New York Labor Law ("NYLL").  Before the

Court is the Parties' application for approval of a settlement agreement.  For the reasons set forth

below, that request is denied.

## **LEGAL STANDARD**

In keeping with FLSA's purpose of ensuring workers "a fair day's pay for a fair day's

work," settlement of FLSA claims requires approval by either the Court or the Department of

Labor.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).  "In deciding

whether to approve a stipulated settlement, the Court must scrutinize the settlement for fairness."

*Boucaud v. City of New York*, No. 07-cv-11098, 2010 WL 4813784, at *1 (S.D.N.Y. Nov. 16, 2010)

(internal quotation marks omitted) (alterations adopted).  In so doing, the Court considers the

following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. American Cancer Soc.*, No. 10-cv-3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). In requesting attorneys' fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.*

## DISCUSSION

The Parties have submitted a joint letter with exhibits detailing why they believe the Settlement Agreement should be approved as fair and reasonable. [ECF No. 70] ("Joint Letter").[1] In so doing, the Parties focus solely on the settlement amount and on the requested attorneys' fees. But the Settlement Agreement contains a host of non-monetary terms which cast doubt on the overall fairness of the settlement, and which ultimately prevent the Court from approving the settlement in its current form.

### I.        Settlement Amount

The Parties have agreed to settle this case for $100,000. Roughly two-thirds of that amount is for Plaintiff, while the rest is for his counsel. This is a strong result for Plaintiff, who claims to be entitled to about $75,000 in damages. That Plaintiff will receive a sum of money amounting to only a small discount on his best-case recovery is a positive and fair outcome, given the costs

---

[1] Attached to the Joint Letter were the following documents: the settlement agreement [ECF No. 70-1] ("Settlement Agreement"); a damages calculation spreadsheet [ECF No. 70-2] ("Damages Calculation"); and the billing records for Plaintiff's counsel [ECF No. 70-3] ("Billing Records").

associated with protracted litigation and the risks inherent in taking a case to trial. This includes the risk that Plaintiff will be unable to establish that he worked as many hours as he claims without compensation.

## II.      Attorneys' Fees

Counsel also is to be well paid. Roughly a third of the settlement amount, $34,000, plus costs and expenses appears to be fair. Courts in this Circuit routinely approve contingency fees of one-third in FLSA cases. *See Payano v. 1652 Popham Assocs., LLC*, No. 17-cv-9983, 2019 WL 464231, at *5 (S.D.N.Y. Feb. 6, 2019) (collecting cases). This is true even in cases when the contingency fee is multiple times higher than counsel's lodestar figure (*i.e.*, the hours billed times counsel's hourly rate). *See, e.g.*, *Johnson v. Brennan*, No. 10-v-4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar.").

Here, counsel's lodestar figure is over $40,000. That this lodestar figure *exceeds* counsel's contingency fee only further supports the fairness of the requested fee. But there is a problem. The Parties' Joint Letter states that the retainer agreement provided counsel a one-third recovery of any settlement; however, a copy of the retainer agreement has not been provided to the Court. Approval of the attorneys' fees without the requisite documentation would be premature. *See Berry v. Mediacom Commc'ns Corp.*, No. 22-cv-5183, 2022 WL 16949925, at *2 (S.D.N.Y. Nov. 15, 2022) ("While the retainer agreement between plaintiff and his counsel is not dispositive as to a proper division between them of the settlement, that agreement must nevertheless be considered by the Court." (internal quotation marks omitted)). Thus, Plaintiff must submit the retainer agreement with his counsel before any fees can be approved.

III.        **Non-Economic Terms**

The non-economic terms of the Settlement Agreement are more problematic and render it unreasonable.  In particular, the Settlement includes a broad release of past *and future* claims, a hindrance on Plaintiff's potential for future employment, a non-disparaging clause that (with a limited exception) precludes the parties from saying anything negative about one another, and a non-cooperation clause which limits Plaintiff's ability to participate or assist in any future proceedings against Defendants.  While the Settlement Agreement does contain a severability clause, that clause is plagued by its own problems which precludes its approval at this time. Revisions are needed.

a.  **The Release**

Competent counsel, of course, ensures that a settlement contains a release in exchange for the contemplated payment.  That very often includes a release not only of the claims that were brought in the action, but also of related claims that could have been brought.  This case is no different in that regard, as Plaintiff has agreed to release all claims that he has now or that he has ever had against Defendants, to the extent that those claims arise under the FLSA, NYLL, or "any state wage and hour law, statute, ordinance or regulation."  Settlement Agreement at 4.  That much is fine.  However, Plaintiff has also agreed to waive any wage-and-hour law claims that he "*in the future* may or could have against [Defendants]."  Settlement Agreement at 4 (emphasis added). This release of future claims is problematic.

"[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action."  *Zackery v. Rondinone Studio LLC*, No. 19-cv-1191, 2019 WL 3006405, at *1 (S.D.N.Y. July 10, 2019) (internal quotation marks omitted) (alterations adopted).  That rule against broad releases is applied most often to releases

that cover claims (such as tort claims) which are unrelated to the FLSA.  *See, e.g.*, *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (rejecting as "far too sweeping" a release which included "any and all claims of slander, libel . . . fraud, prima facie torts or other tort" (internal quotation marks omitted)).  But the rule has also been applied to settlements which (like this one) would require the plaintiff to release "all FLSA and NYLL claims 'that Plaintiff ever had, now has, or which Plaintiff may in the future have.' " *Ramirez v. Columbus Rest. Fund IV, LLC*, No. 20-cv-8053, 2022 WL 429089, at *2 (S.D.N.Y. Jan. 10, 2022).  This is for good reason.  A settlement which contains a release of future claims operates as a license to violate the law.  To permit such a license which would clearly run counter to the policy purposes undergirding the FLSA—or any other law for that matter.

While Defendants have also agreed to provide a release, Defendants' release—in contrast to Plaintiff's—is limited.  Specifically, Defendants have agreed to waive any claim "arising out of or relating to any matter *up to the effective date of this Agreement*."  Settlement Agreement at 4 (emphasis added).  Certain courts in this District have found that broad releases may be permissible when they are reciprocal, as the mutuality mitigates coercion concerns.  In *Acosta v. Prudent Management, LLC*, No. 17-cv-7590, 2021 WL 391332 (S.D.N.Y. Feb. 4, 2021), for example, the court explained that the inclusion of "reciprocal general releases, assuage[s] concerns that the agreement only enriches Defendants without providing Plaintiff with any comparable benefit." *Id.* at *4.  Before approving the releases in that case, however, the court emphasized that the waivers "do not release any future claims by the parties." *Id.*  The release of future claims is what sets this case apart and precludes the Court from approving the settlement as drafted.

### b. Future Employment

Other aspects of the agreement also raise concerns. Paragraph 4 of the Settlement Agreement provides that "[a]lthough nothing prohibits Plaintiff from seeking future employment with [Defendants], Plaintiff understands and agrees that [Defendants'] decision not to extend any future offer of employment to Plaintiff shall not constitute unlawful retaliation . . . for having participated in the Action." Settlement Agreement ¶ 4. In other words, the Settlement Agreement requires Plaintiff to waive any future retaliation claim. This too cannot stand.

"[C]ourts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." *Hernandez v. Ultra Shine Car Wash, Inc.*, No. 20-cv-498, 2021 WL 5361817, at *1 (S.D.N.Y. Oct. 8, 2021) (internal quotation marks omitted). The Settlement Agreement attempts to work around that prohibition by permitting Plaintiff to apply for future employment with Defendants, while denying Plaintiff any legal recourse if he is rejected for retaliatory purposes.

The provision operates as a clear bar from future employment. It also—like other releases of future claims—operates as a license to violate the law. No settlement agreement containing such a provision can be considered fair under the FLSA. *See Palaguachi v. All City Remodeling, Inc.*, No. 15-cv-9688, 2017 WL 11572258, at *2 (S.D.N.Y. Aug. 29, 2017) ("[T]he Court cannot approve the release which requires Plaintiffs to waive claims that do not relate to a wage-and-hour suit, such as discrimination or retaliation."); *Miranda v. Grace Farms, Inc.*, No. 16-v-1369, 2022 WL 1771720, at *3 (S.D.N.Y. May 31, 2022) (rejecting settlement agreement which provided that "Defendants . . . may deny Plaintiff employment for any position they seek, and said denial will not be a violation of any . . . law . . . and will not be retaliatory in any way").

### c.  The Non-Disparagement Clause

The Settlement Agreement also contains a mutual non-disparagement clause, which prevents both parties from criticizing one another.  Settlement Agreement at 5-6.  Such provisions are reviewed with skepticism.  They "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights."  *Gaspar v. Pers. Touch Moving, Inc.*, No.13-cv-8187, 2015 WL 7871036, at *3 (S.D.N.Y. Dec. 3, 2015).  But while courts in this Circuit have held that "not all non-disparagement clauses are *per se* objectionable," such clauses are routinely rejected unless they "include a carve-out for truthful statements about plaintiffs' experience litigating their case."  *Payano v. 1652 Popham Assocs., LLC*, No. 17-cv-9983, 2019 WL 464231, at *4 (S.D.N.Y. Feb. 6, 2019) (internal quotation marks omitted).

Such a carve-out does exist here.  Settlement Agreement at 6.  But more appears necessary in the event (however unlikely) that Plaintiff returns to work for Defendants.  If such future employment does come to pass, and violations of the FLSA follow, Plaintiff must be allowed to speak out about the misconduct.  Forced silence of this sort would handicap Plaintiff's co-workers, who also might be injured by FLSA violations but who may not be aware of their rights.  As such, the non-disparagement clause must be modified to allow Plaintiff to speak about any FLSA violation—past, present, or future.

### d.  The Non-Cooperation Clause

The Settlement Agreement also contains a non-cooperation clause (though it is not styled as such).  Pursuant to this clause, Plaintiff may not:

> initiate, encourage, assist, or participate in any Proceeding, including but not limited to providing any information to a person bringing a Proceeding against Defendants . . . , unless lawfully subpoenaed or otherwise ordered to do so by a court or

> administrative agency in connection with any investigation it is
> conducting or as otherwise required by applicable law, concerning
> any of the claims and/or causes of action waived in . . . this
> Agreement.

Settlement Agreement at 5.  As other courts in this District have recognized, "[s]uch a provision

in an FLSA settlement is contrary to the remedial purposes of the statute." *Leon-Martinez v. Cent.*

*Café & Deli*, No. 15-cv-7942, 2017 WL 1743935, at *2 (S.D.N.Y. Apr. 13, 2017); *see also*

*Fernandez*, No. 18-cv-4540, 2019 WL 4412804, at *2 (same) (collecting cases).  Accordingly, the

Court will not approve a settlement agreement between the parties unless this provision is stricken.

    **e. Severability Clause**

    Finally, the Settlement Agreement contains a severability clause which provides that

"[s]hould any provision or portion of the agreement be held invalid or unenforceable, the affected

provision shall be modified to the extent necessary to make it legal, valid, and enforceable," and

that if the provision "cannot be so modified, it shall be severed from the Agreement."  Settlement

Agreement at 7.  Ordinarily, such a clause would permit this Court to approve the Settlement

Agreement while modifying or striking the problematic provisions.  *See, e.g., Lara v. Air Sea Land*

*Shipping & Moving Inc.*, No. 19-cv-8486, 2019 WL 6117588, at *3 (S.D.N.Y. Nov. 18, 2019)

(striking non-disparagement provision and revising the release).  But that cannot be done here.

    The severability clause contained in Paragraph 12 of the Settlement Agreement includes a

so-called "spoiler clause," which provides as follows:

> If the release of claims contained in Paragraph 2 of this Agreement
> is limited or held to be null and void, then: (i) this Agreement shall
> be interpreted or modified to bar any claim that Plaintiff may assert,
> or if not so interpreted and/or modified, (ii) Plaintiff shall execute
> an enforceable general and unlimited release of all claims.  If,
> however, neither Paragraph 12.b.(i) nor Paragraph 12.b.(ii) can be
> accomplished, as a matter of law and Plaintiff institutes an action
> against Defendants, then Plaintiff shall return, upon demand by
> Defendants, the Settlement Payment, or if its return is not permitted

> by law or not demanded by Defendants, such amount shall be a set-
> off against any recovery.

Settlement Agreement at 7.

A near-identical clause was rejected by another court in this Circuit, which explained that the spoiler clause "seeks to nullify the effect of judicial review of the general release terms of the agreement." *Nieto v. Izzo Constr. Corp.*, No. 15-cv-6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018). That court went on to explain that "[a]llowing parties to include such spoiler provisions in FLSA settlement agreements would permit further end-runs around *Cheeks* that this court cannot—and will not—countenance." *Id.* This Court agrees with that assessment and concludes that the spoiler clause effectively nullifies the severability clause. As a result, the Court cannot revise the Agreement to address objectionable provisions and cannot otherwise approve the Settlement Agreement at this time.

## CONCLUSION

The hundred-thousand-dollar settlement in this case represents a strong top-line result for the Plaintiff. But settlements are about more than just the money. This settlement permits Defendants to refuse to hire Plaintiff for purely retaliatory reasons. It also allows Defendants to re-hire Plaintiff and then underpay him in violation of state and federal law. In either event, Plaintiff could neither complain of this conduct in court, nor confide with a co-worker. This is an abuse. Money can buy a lot of things, but not a license to violate the law.

Accordingly, the Court cannot approve the settlement as currently proposed. The Parties are hereby ordered that on or before May 20, 2024, they must submit either (i) a revised settlement

agreement which cures the deficiencies discussed above, or (ii) a joint letter which advises the Court of whether they intend to abandon the settlement agreement and continue pursuing this litigation.

**SO ORDERED.**

**Date:  April 29, 2024**
        **New York, NY**

_Mary Kay Vyskocil_
**MARY KAY VYSKOCIL**
**United States District Judge**